IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KELLEY TROY COOLEY,       )
    Petitioner,       )    Civil Action No. 10-2 Erie
           )
v.       )    District Judge Sean J. McLaughlin
           )    Magistrate Judge Susan Paradise Baxter
PAUL K. SMEAL, et al.,       )
    Respondents.       )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the Petition For Writ Of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.    REPORT[1]

Petitioner Kelley Troy Cooley is a state prisoner who is currently incarcerated at the State Correctional Institution Laurel Highlands, which is located in Somerset, Pennsylvania. Before the Court is his Petition For Writ Of Habeas Corpus [ECF No. 7], which he has filed pursuant to 28 U.S.C. § 2254. He challenges the judgment of sentence imposed by the Court of Common Pleas of Erie County at Criminal Docket No. 1072 of 2006. He raises the following five claims:

    Claim 1    There was insufficient evidence to support his conviction of possession of marijuana;

    Claim 2    There was insufficient evidence to support his conviction of public drunkenness;

    Claim 3    There was insufficient evidence to support his conviction of disorderly conduct;

---

[1] Respondents have submitted all relevant transcripts and the Common Pleas Court's file, which contains documents indexed 1 through 116, and which will be cited to as "CP Dkt. No. __."

1

Claim 4      "Did the lower court violate Petitioner's constitutional right to counsel by forcing him to represent himself without a comprehensive colloquy?" and;

Claim 5      "Whether Petitioner was denied his right to represent himself?"

[ECF No. 7, ¶ 12 at 5-11].[2]

## A. Relevant Background

At the Court of Common Pleas' Criminal Docket No. 1072 of 2006, Petitioner was charged with possession of marijuana, possession of drug paraphernalia, disorderly conduct, and public drunkenness. He had a number of attorneys during his pre-trial proceedings. Assistant Public Defender Michael A. DeJohn, Esq., represented him at his jury trial, which was held on November 7, 2006.[3] Petitioner was acquitted of possession of drug paraphernalia and convicted by the court of possession of marijuana and the summary offenses of public drunkenness and disorderly conduct. On March 7, 2007, the court sentenced him to:

Count 1: Possession of Marijuana: 30 days of probation consecutive to Count 4 of 1294 of 2006

Count 3: Disorderly Conduct: 90 days of probation consecutive to Count 1 plus costs

Count 4: Public Drunkenness: Merged with Count 3

---

[2] Petitioner also argues that the "trial judge and prosecutor violate[d] [his] right to due process and equal protection to a fair jury trial?" [ECF No. 7, ¶ 13 at 11]. He does not explain this claim further or discuss any factual support for it, and therefore it is not possible to discern the basis of this claim. In his state collateral appeal, Petitioner did argue that the trial court "committed malicious prosecution in violation of due process and equal protection[.]" (CP Dkt. No. 82 at 1). To the extent that he is raising that same claim here, it is procedurally defaulted because he withdrew that appeal and therefore failed to exhaust the claim. See, e.g., Whitney v. Horn, 280 F.3d 240, 381 (3d Cir. 2002); Lines v. Larkins, 208 F.3d 153, 159-60 (3d Cir. 2000); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). See infra for a discussion on the doctrines of exhaustion and procedural default.

[3] At or around this same time, Petitioner was convicted at Criminal Docket No. 1296 of 2006 of robbery, receiving stolen property, retail theft, and harassment. Petitioner challenges those convictions in this Court in the habeas corpus case Cooley v. Smeal, No. 1:10-cv-1 (W.D. Pa.).

2

Petitioner proceeded pro se in his direct appeal with the Superior Court of Pennsylvania.[4] He raised the claims listed above as Claims 1 through 4. He did not raise the claim listed above as Claim 5 (that he was denied the right to represent himself). (CP Dkt. No. 51; see also CP Dkt. No. 84, Commonwealth v. Cooley, No. 1072 and 1294 of 2006, slip op. at 7-8 (C.P. Erie Mar. 10, 2009) (summarizing the claims raised by Petitioner on direct appeal)).

On July 24, 2007, the Common Pleas Court issued a 1925(b) Opinion in which it explained that the claims Petitioner raised on appeal were without merit. (CP Dkt. No. 55, Commonwealth v. Cooley, Nos. 1294 & 1072 of 2006, slip op. (C.P. Erie July 24, 2007)). On August 1, 2008, the Superior Court issued a Memorandum in which it affirmed Petitioner's judgments of sentences. (CP Dkt. No. 80, Commonwealth v. Cooley, No. 606 WDA 2007, slip op. (Pa.Super. Aug. 1, 2008)). The Superior Court denied Claims 1 through 3 (in which he argued that there was insufficient evidence to support his convictions) for procedural reasons (failure to comply with Pa.R.A.P. 2116(a), which at the time required that the statement of questions involved must not exceed one page).[5] (Id. at 4-5). The Superior Court denied claim four on the merits. (Id. at 7-9). On January 12, 2009, the Supreme Court of Pennsylvania denied a petition for allowance of appeal. (CP Dkt. No. 81).

On January 26, 2009, Petitioner filed a pro se PCRA motion in which it appears that he once again raised the claims set forth herein as Claim 1 through 4. (CP Dkt. No. 82 at 1-2 (summarizing

---

[4] The trial court held a hearing on August 31, 2007, and found that Petitioner was knowingly, intelligently, and voluntarily waiving his right to counsel in his appeal. As a result, appointed counsel was permitted to withdraw.

[5] At the time, Pa.R.A.P. 2116(a) provided, in relevant part:

General rule. The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.

3

PCRA claims)). The PCRA Court appointed William J. Hathaway, Esq., to represent Petitioner. Hathaway filed a "no merit" letter and a petition for leave to withdraw as counsel in which he explained that in his professional opinion Petitioner failed to state any colorable claim for PCRA relief. (CP Dkt. No. 82).

On March 10, 2009, the PCRA Court issued an 11-page Notice Of Intent To Dismiss, in which it explained why none of Petitioner's claims had merit. (CP Dkt. No. 84, Cooley, No. 1072 and 1294 of 2006, slip op. at 1-11). Petitioner filed objections and the PCRA court appointed David Schroeder, Esq., to represent him. Schroeder then filed a response to Petitioner's objections in which he explained that he concurred with Hathaway that Petitioner's PCRA claims had no merit. (CP Dkt. No. 93).

On June 8, 2009, the court officially dismissed the PCRA petition. (CP Dkt. No. 94). Petitioner initially pursued an appeal *pro se*. (CP Dkt. Nos. 97, 103 & 104). However, on November 4, 2009, he filed a request that his appeal be withdrawn. On November 6, 2009, the Superior Court granted his request and marked the appeal "as voluntarily DISCONTINUED by appellant." (CP Dkt. No. 116).

Petitioner next filed the instant Petition for Writ of Habeas Corpus with this Court. Respondents have filed their Answer [ECF No. 20] and the relevant state court records.

### B. Discussion

#### 1. Claims 1, 2, 3 and 5 Are Procedurally Defaulted

##### (a) The Exhaustion Requirement

A federal habeas court may not grant a state prisoner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). Exhaustion "addresses federalism and comity concerns by 'affording the state courts a

meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" Parker v. Kelchner, 429 F.3d 58, 61 (3d Cir. 2005), quoting Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993), which quoted Vasquez v. Hillery, 474 U.S. 254, 257 (1986). The petitioner carries the burden of proving exhaustion of all available state remedies. See, e.g., Lambert, 134 F.3d at 513.

Importantly, in order to exhaust a claim, a petitioner must "fairly present" it *to each level of the state courts*. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then the Superior Court either on direct or PCRA appeal. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Petitioner failed to exhaust Claim 5. It does not appear from the record before the Court that he "fairly presented" it to the state courts. Although, generally, a district court should require that a state prisoner return to state court to exhaust those claims that are not exhausted, see Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), the court may "excuse" a petitioner's failure to exhaust as "futile" if it is clear that his claims are now barred from review under state law. Gray v. Netherland, 518 U.S. 152, 161 (1996). Futility is established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims." Lines, 208 F.3d at 164. Requiring Petitioner to return to state court to attempt to litigate Claim 5 would be "futile" because he is foreclosed from doing so under Pennsylvania law.[6]

---

[6] The PCRA expressly limits the availability of relief and requires, with few exceptions not applicable here, that a post-conviction petition be filed within one year of the date a judgment becomes final. 42 Pa.C.S. § 9545(b)(1). Since more than one year has passed since Petitioner's judgment of sentence became final, any PCRA motion that he might now attempt to file would be untimely and non-reviewable in the Pennsylvania courts. Additionally, if Petitioner returned to state court to attempt to litigate the claims at issue in another PCRA motion, the state court likely would determine that he waived the claims. See 42 Pa.C.S. § 9544(b).

5

### (b) Procedural Default

A finding by a district court that exhaustion is "futile" often results, as it does here, in a finding that the claims at issue are barred from federal habeas review. The Third Circuit Court has repeatedly instructed that "claims deemed exhausted because of a state procedural rule are deemed procedurally defaulted." Lines, 208 F.3d at 160; Whitney, 280 F.3d at 381; Werts, 228 F.3d at 192. Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman v. Thompson, 501 U.S. 722, 730 (1991), and it bars federal habeas review of a claim whenever the petitioner has failed to raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.

In addition to Claim 5, Petitioner also has procedurally defaulted Claims 1, 2 and 3 (in which he contends that there was insufficient evidence to support his convictions). As set forth above, the Superior Court deemed each of those claims waived because he failed to raise them in accordance with Rule 2116(a) of the Pennsylvania Rule of Appellate Procedure.

The procedural default doctrine also prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is "independent" of the federal question and "adequate" to support the judgment. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732. A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985). That is the case here, since the Superior Court's decision was based on the application of Pa.R.A.P. 2116(a). A state rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). See also Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007) (a state

rule is adequate when a state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule and the state court's refusal was consistent with other decisions). Importantly, as the U.S. Supreme Court recently held:

> [A] discretionary state procedural rule can serve as an adequate ground to bar federal habeas review. Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine. To the contrary, a discretionary rule can be "firmly established" and "regularly followed" – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others. See Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L.Rev. 1128, 1140 (1986) ("[R]efusals to exercise discretion do not form an important independent category under the inadequate state ground doctrine").
>
> A contrary holding would pose an unnecessary dilemma for the States: States could preserve flexibility by granting courts discretion to excuse procedural errors, but only at the cost of undermining the finality of state court judgments. Or States could preserve the finality of their judgments by withholding such discretion, but only at the cost of precluding any flexibility in applying the rules.

Beard v. Kindler, — U.S. —, 130 S.Ct. 612, 618 (2009). The state rule at issue here qualifies as "adequate" because, although it appears it may have been discretionary, it was firmly established and regularly followed in non-capital cases at the time Petitioner's default occurred. See, e.g., Commonwealth v. Poplawski, 852 A.2d 323, 326 n.3 (Pa. Super. 2004); Commonwealth v. Jarowecki, 923 A.2d 425, 428 (Pa.Super. 2007), reversed on other grounds, 985 A.2d 955 (Pa. 2009); Commonwealth v. Adrulewicz, 911 A.2d 162, 164 n.7 (Pa.Super. 2006).

A petitioner whose constitutional claims are procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986).[7] Petitioner has not established either factor.[8]

---

[7] As the Third Circuit Court has stated:

Finally, even if could be said that Pa.R.A.P. 2116(a) was not "adequate" and that Petitioner was entitled to merits review on Claim 1, 2, and 3, he still would not be entitled to habeas relief. In its 1925(b) Opinion, the Court of Common Pleas set forth in detail why there was sufficient evidence to support Petitioner's convictions for possession of marijuana, public drunkenness, and disorderly conduct. (CP Dkt. No. 55, Cooley, Nos. 1294 & 1072 of 2006, slip op. at 25-29). For the reasons set forth therein, Claims 1, 2, and 3 fail on the merits.

In conclusion, Claims 1, 2, and 3 are procedurally defaulted because Petitioner failed to raise them in compliance with Pa.R.A.P. 2116(a). In addition, each of those claims also fail on the merits and may be denied for that reason as well. Claim 5 is procedurally defaulted because it appears that Petitioner failed to raise it to the state courts and it would be futile for him to attempt to do so now.

### 2. Claim 4 Has No Merit

#### (a) Standard Of Review

---

> Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." [Murray v. Carrier, 477 U.S. at 486]. Indeed, in Coleman v. Thompson, 501 U.S. 722 [ ] (1991), the Court addressed . . . the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding. The Court, applying Murray v. Carrier, concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice. Coleman, 501 U.S. at 752[.]

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002).

[8] Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). See also House v. Bell, 547 U.S. 518 (2006); Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. It is not applicable to this case.

8

The only claim of Petitioner's that this Court may review on the merits is Claim 4, in which he contends that "the lower court violated [his] constitutional right to counsel be forcing him to represent himself without a comprehensive colloquy."[9]  This Court's analysis of this claim is governed by the Antiterrorism and Effective Death Penalty Act's  ("AEDPA's") standard of review, which modified "a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As codified at 28 U.S.C. § 2254(d), AEDPA restricts a federal court's authority to grant relief when, as is the case here, the state court has "adjudicated on the merits" the petitioner's federal constitutional claims.  In such cases, federal habeas relief may only be granted when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d).  See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert, 387 F.3d at 234.  Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).

As the U.S. Supreme Court recently observed:

If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could

---

[9]  The right to counsel is explicitly safeguarded by the Sixth Amendment, which states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  It is clearly established federal law as determined by the Supreme Court that no defendant can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel. See Powell v. Alabama, 287 U.S. 45 (1932); see also Johnson v. Zerbst, 304 U.S. 458, 467-68 (1938).  Moreover, clearly established law applies this right to all "critical" stages of a criminal prosecution, including pre-trial hearings. Maine v. Moulton, 474 U.S. 159, 170 (1985).

9

disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011).

Factual determinations made by the state court are also given considerable deference under AEDPA. Within § 2254(d)'s overarching standard, a petitioner may attack specific factual determinations that are subsidiary to the ultimate decision under § 2254(e)(1), which provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." See Lambert, 387 F.3d at 235-39; Lewis v. Horn, 581 F.3d 92, 111 (3d Cir. 2009). In addition, Section 2254(e)(1) applies to all factual determinations made by the state courts, regardless of whether a state court has "adjudicated on the merits" a claim for the purposes of § 2254(d). See, e.g., Lewis, 581 F.3d at 100, citing Fahy v. Horn, 516 F.3d 169, 181 (3d Cir. 2008).

### (b) Background

In or around April 2006, Petitioner filed an Application For Public Defender. Thereafter, Bernard T. Hessley, Esq., with the Public Defender's Office, filed a motion for modification of bail, which was denied without prejudice. Other attorneys with the Public Defender's Office (Garrett Taylor, Esq., and Elizabeth Dwyer, Esq.) were then assigned to the case. Each of these lawyers represented Petitioner for a short period of time and then left the Public Defender's Office for separate reasons unrelated to Petitioner's case. (See CP Dkt. No. 55, Cooley, Nos. 1294 & 1072 of 2006, slip op. at 17). In June 2006, Petitioner retained private counsel, Bruce Sandmeyer, Esq. He entered his appearance as

10

Petitioner's counsel in July 2006. (Id.) On July 19, 2006, Sandmeyer filed a Motion for Bond Reduction, which was denied. (CP Dkt. Nos. 5-6).

Petitioner then filed a series of *pro se* motions. He had become dissatisfied with Sandmeyer's representation because he had failed to get him released on bond and had refused to file pre-trial motions that Petitioner wanted him to file (because he considered the motions to be frivolous). On July 27, 2006, Petitioner filed a "Motion for Stay of Continuance and Motion to Withdraw Counsel Bruce Sandmeyer." (CP Dkt. No. 7). In this motion, Petitioner asked that Sandmeyer be removed as counsel of record for both of his pending criminal cases. He contended that Sandmeyer had not been honest with him. On August 2, 2006, Petitioner filed a document entitled "Request Permission to Have Pre-Trial Motions Filed and Right to File Reinstated Due to Ineffective Assistance of Counsel." (CP Dkt. No. 8). In this document, Petitioner claimed that Sandmeyer had been ineffective for not filing any pre-trial motions despite Petitioner's requests that he do so. Petitioner sought judicial review of the *pro se* motions he had filed, including a motion to suppress. (See CP Dkt. No. 55, Cooley, Nos. 1294 & 1072 of 2006, slip op. at 8 (summarizing relevant procedural history)).

On August 15, 2006, Petitioner filed a "Writ of Mandamus and Motion to Withdraw Public Defenders and Attorney Bruce Sandmeyer as Counsel of Record and Reconsideration of Bond Reduction." (CP Dkt. No. 11). He requested "all counsel be removed from his case … since the defendant can establish that he is being forced to except ineffective assistance by the Court's failure to act on *pro se* petitions filed in the above dockets." He alleged that Sandmeyer misled the Court at a bond hearing on July 25, 2006; that he "deliberately and intentionally provided this Honorable Court with misleading information"; that he is incompetent and there are witnesses to establish his lies and "act of stacking cases"; and, that he "has not seen, nor heard from [him]. Who's been informed to withdraw

11

as counsel in the instant case. And counsel has failed to do so, and correct his mistake in the bond reduction motion."

In the wake of Petitioner's written demands, on August 30, 2006, Attorney Sandmeyer filed a Motion to Withdraw. (CP Dkt. No. 13). Given the series of documents filed by Petitioner in which he had consistently sought the removal of Sandmeyer, an Order was entered dated September 1, 2006, permitting him to withdraw. (See CP Dkt. No. 14, and CP Dkt. No. 55, Cooley, Nos. 1294 & 1072 of 2006, slip op. at 9). Thus, as the Common Pleas Court later explained, "[t]here was then a window of time in which [Petitioner] was *pro se*." (CP Dkt. No. 55, Cooley, Nos. 1294 & 1072 of 2006, slip op. at 9).

On September 11, 2006, Petitioner appeared before the Court of Common Pleas for a *pro se* colloquy. When the Court asked him if he could continue to pay for private counsel, Petitioner requested that he be released on bond so that he could "get my money to do that." (9/11/06 Hr'g Tr. at 4). The court denied his request for release and continued the trial until the November term so that Petitioner could "get [himself] squared away with an attorney[.]" (Id. at 7). The court stated to him:

> In November one of two things are going to happen: You're going to go to trial with a lawyer or without a lawyer … What I'm going to do at this point is to advise you of what happens and what the pitfalls are of proceeding without a lawyer and so that you're going to be fully advised of that so there will be no delays come November if you come into this courtroom or any courtroom without a lawyer.
>
> First of all, you have a right to be represented by an attorney, which you know. You have two choices in that regard: You can employ a lawyer or if you think you meet the financial qualifications, you can apply with the Public Defender's office, and we will appoint a lawyer for you if you meet the financial qualifications.

(Id. at 9). The court then gave Petitioner a *pro se* colloquy, which included explaining the charges against him and the possible sentences that he faced. (Id. at 9-14). On that same day, the court issued an order in which it continued the case until the November term "in order for the defendant to obtain

12

counsel." The court also noted that Petitioner "was … advised of his right and consequences of *pro se* representation." (CP Dkt. No. 15).

On September 19, 2006, Petitioner filed a motion in which he asked the court to reconsider the order in which it had granted Attorney Sandmeyer's motion to withdraw. (CP Dkt. No. 19). He contended that while he has the right to represent himself, Faretta v. California, 422 U.S. 806 (1975) requires that the court first must make a finding of fact that his waiver of his right to counsel was knowing, intelligent, and voluntary. He alleged that that did not occur and therefore he should be released.

On September 25, 2006, Petitioner filed a *pro se* motion in which he asked for consideration of the motion to suppress that he had filed. (CP Dkt. No. 26). That motion appears to have been limited to issues related to Petitioner's other criminal case, which was proceeding before the Court of Common Pleas at the same time at Criminal Docket No. 1294 of 2006 (where he was charged with robbery, receiving stolen property, retail theft, and harassment). A hearing on that *pro se* motion was held on October 9, 2006. (See CP Dkt. No. 22, which includes the transcript of the suppression hearing).

Petitioner did not secure counsel or seek to have counsel appointed. He did not ask for a continuance of the suppression hearing in order to secure counsel. (See CP Dkt. No. 55, Cooley, Nos. 1294 & 1072 of 2006, slip op. at 10). He appeared at the evidentiary hearing on October 9, 2006, without counsel. At the beginning of the hearing he stated: "Before we proceed could we address an issue about my representation here?" The Court replied: "No. You have already fired your lawyer." (10/9/06 Hr'g Tr. at 2). Petitioner complained that the court "didn't give me [a] proper colloquy in order to get rid of my lawyer." (10/9/06 Hr'g Tr. at 3). He became disruptive, told the court to "[h]ave this hearing without me[,]" and the court ordered that he be removed from the courtroom. (Id. at 4).

The Common Pleas Court summarized what happened next:

13

> The hearing went on in [Petitioner's] absence and the record will speak for itself.
>
> Specifically, the Commonwealth adduced testimony to establish there was no basis to grant suppression relief. Findings of Fact and Conclusions of Law were entered outlining how [Petitioner's] constitutional rights were not violated by the police conduct. See Suppression Hearing Transcript, Monday October 9, 2006 pp. 14-17.
>
> [Petitioner's] decision to appear at the hearing without counsel and then to leave the hearing did not alter the testimony of the police officer at the hearing. The facts are of record and suggest why Attorney Sandmeyer in his professional judgment saw no need to acquiesce to [Petitioner's] demand to file a suppression motion.
>
> Also of note, there was no evidence to suppress. The items subject to the Retail Theft/Robbery had been left at the store. The hot dogs found in [Petitioner's] car were not the subject of any criminal charge against [Petitioner]. [Petitioner] did not make any post arrest inculpatory statement(s).

(CP Dkt. No. 55, Cooley, Nos. 1294 & 1072 of 2006, slip op. at 10 (footnote omitted)).

Petitioner continued to make allegations of error regarding the alleged failure to hold a colloquy with him at the time of acting on Attorney Sandmeyer's Motion to Withdraw. On October 23, 2006, the court presided over a hearing in order to provide him with the opportunity to address any complaints he still had. At the hearing, the following exchange occurred:

> The Court: …. [W]hen I got Mr. Sandmeyer's motion [to withdraw], it was in the wake of getting your motion where you said you didn't want him. And you had put forth some pretty powerful reasons why you didn't want him, and that was in your motion of August 15th you had indicated that. And I read these to your earlier, all the reasons you wanted him withdrawn. So that's why he – that's why the [motion] was granted allowing him to withdraw because it was consistent with what you were asking for.
>
> So that's what the purpose of today is because technically, you would have had a right to be heard if you had any objections to Mr. Sandmeyer being withdrawn. And that's what I'm asking you here today. And I asked you at the outset: What objections do you have to Mr. Sandmeyer being withdrawn?
>
> Petitioner: The objection that I would have from him being withdrawn as counsel is that my right to – my 6th Amendment right to counsel was violated. I never even received knowingly, intelligent, voluntary waiver of counsel.

14

> The Court: I'm not asking you to waive counsel.

(10/23/06 Hr'g Tr. at 18-19). Petitioner then asked the court to appoint him "effective counsel," and stated that Sandmeyer had been ineffective and that is why he had filed his earlier motions seeking Sandmeyer's removal. (Id. at 19-21). The Court replied:

> The Court: Well, the record reflects that your case got continued from the September to November term and your case will be called during the November term of court. As you have been informed, you certainly have the right to counsel and you have the right to hire counsel or you have the right to apply for counsel and counsel will be appointed for you, that's your responsibility. So you have got time to get that resolved between now and November.

(Id. at 22-23). At that point, Petitioner again insisted that he needed to be released on bond so that he could make money to pay for an attorney. (Id. at 23). The court later observed:

> [Petitioner's] position regarding Attorney Sandmeyer's withdrawal never wavered. It appears [his] real motive in demanding an oral colloquy on the Motion to Withdraw was to create another opportunity to have his bond reduced based on Sandmeyer's alleged malpractice/ineffectiveness/misfeasance. In essence, [he] wanted to convert his allegations against Attorney Sandmeyer into a basis to get out of jail.

(CP Dkt. No. 55, Cooley, Nos. 1294 & 1072 of 2006, slip op. at 13 n.6).

After this hearing, the court appointed Michael DeJohn, Esq., Assistant Public Defender, as Petitioner's counsel. (CP Dkt. No. 27). The court then issued the following Order:

> A colloquy was held on October 23, 2006 to allow Mr. Cooley an opportunity to voice any objections to the Motion to Withdraw as filed by Attorney Bruce Sandmeyer. In addition to Mr. Cooley, present were Bruce Sandmeyer, Attorney Michael DeJohn and First Assistant District Attorney Robert Sambroak.
>
> At the colloquy, consistent with his prior written submissions, including two Motions to Withdraw Attorney Sandmeyer as counsel, Mr. Cooley expressed the opinion that Attorney Bruce Sandmeyer has committed malpractice and otherwise provided ineffective assistance of counsel to him. When specifically asked several times, Mr. Cooley stated unequivocally he did not want Attorney Bruce Sandmeyer to continue as his counsel. Accordingly, the Order of September 1, 2006 granting Attorney Sandmeyer's Motion to Withdraw as Counsel of Record is hereby AFFIRMED since Mr. Cooley has now had an opportunity to be heard in

15

person by the Court in addition to the pleadings as filed by him in August, 2006 prior to the submission of Attorney Sandmeyer's Motion to Withdraw.

In summary, Mr. Cooley has asked for counsel and received Court-appointed counsel (Attorneys Hessley, Taylor and Dwyer) early on in this case. Mr. Cooley then secured private counsel, Attorney Sandmeyer. Mr. Cooley filed written pleadings demanding that Attorney Sandmeyer be removed from this case. Consistent therewith, Attorney Sandmeyer filed a written Motion to Withdraw. Mr. Cooley has now had the benefit of an oral colloquy on the Motion to Withdraw in which he adamantly insists he does not want to be represented by Attorney Sandmeyer. Mr. Cooley's position now is the same as it was in August/September, 2006 when Attorney Sandmeyer presented his Motion to Withdraw.

Mr. Cooley has again requested court-appointed counsel. Attorney Michael DeJohn has been appointed and entered an appearance at each of the above Docket Numbers.

*The record also reflects an evidentiary hearing was held on October 9, 2006 on a pro se pre-trial Motion to Suppress at Docket Number 1294 of 2006. A copy of the hearing transcript and the Findings of Fact and Conclusions of Law are hereby forwarded to Attorney DeJohn. If in the professional opinion of Attorney DeJohn there is a need to re-open the record of the Suppression Hearing, this Court would entertain such a Motion.*

These cases will be tried during the November 2006 term of court.

(CP Dkt. No. 30 (emphasis added)).

Attorney DeJohn did not file a motion to re-open the record of the suppression hearing.

### (2) Legal Analysis

On direct appeal to the Superior Court, Petitioner contended that his Sixth Amendment rights were violated because the trial court "forced" him to proceed *pro se*. In rejecting this claim, the Superior Court found as fact that Petitioner was "represented by counsel at all proceedings before the trial court except one: A hearing on [his] *pro se* motion seeking suppression of evidence [which was held on October 9, 2006]." (CP Dkt. No. 80, <u>Cooley</u>, No. 606 WDA 2007, slip op. at 7). It then held that

16

Petitioner's *pro se* status "at that proceeding was his own doing." (Id.) It pointed out that Petitioner had at least two hearings on the issue and determined that "the trial court provided Cooley with sufficient instructions to protect his constitutional rights." (Id. at 9).

The Superior Court's determination that Petitioner was represented by counsel at all proceedings before the trial court except for his October 9, 2006, suppression hearing was not an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). That suppression hearing was regarding issues related to the charges Petitioner faced at Criminal Docket No. 1294 of 2006 and not the charges he faced at Criminal Docket No. 1072 of 2006, which are the subject of this habeas proceeding. Thus, Petitioner has failed to show that he was forced to proceed *pro se* at any critical stage of before the trial court for the criminal case at issue here. Accordingly, this claim has no merit and it must be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

17

constitutional claims debatable or wrong." Id. Applying these standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the Petition For Writ Of Habeas Corpus be denied. It is further recommended that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 15 , 2011